UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SORTIUM USA, LLC, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| | § Civil Action No. 3:11-CV-1656 |
| ERIC HUNGER, CHICAGO AMERICAN | § |
| MANUFACTURING, INC., AND BIG TIME | § |
| PRODUCTS, INC., | § |
| | § |
| Defendants. | § |
| | § |
| | § |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
## BIG TIME PRODUCTS, INC.'S MOTION FOR SUMMARY JUDGMENT

### A. INTRODUCTION

The Plaintiff, SORTIUMUSA, LLC ("Sortium"), pursuant to FEDERAL RULE OF CIVIL PROCEDURE files this response in opposition to defendant BIG TIME PRODUCTS, LLC's ("BTP") motion for summary judgment. Defendant BTP alleges to dismiss count 8 of Plaintiff's Fourth Amended Complaint. Plaintiff has genuine dispute as to the material fact and therefore Plaintiff states as follows.

### B. STATEMENT OF FACTS

Plaintiff Sortium engages in the business of creating custom design displays and fixtures and distributing them to retailers and bland markets. From 2009 onwards Sortium could work with various OEM manufacturers who would build Sortium products on a contract manufacturing basis, which is currently typical of custom design display and fixture companies that sell such products to retailers and brand markets. On the other hand, Defendant BTP is a glove manufacturer that sells its products through retailers using several specialized retail display fixtures.

On or about September 2009, Sortium presented an idea of an outdoor garden glove display to Defendant BTP for the display of work gloves, which was received favorably by Defendant BTP. Consequently, Defendant BTP agreed to supply the Glove Displays once the design and price was finalized, which proved to be an annual, seasonal, recurring requirement.

Thereafter a meeting was held between Plaintiff Sortium and Defendant BTP, wherein Defendant Eric Hunger (who was then representing Sortium) took down notes of the Glove Display design specifications and drawings. Post this meeting and as part of the design process for the Glove Display, Plaintiff Sortium generated a set of four (4) renderings of the overall form and function of the Display. These were each marked with the Client Confidentiality and Ownership Notice, and were transmitted to Defendant BTP in order to facilitate requirements gathering and the design of the Glove Display. These Design Renderings had been copyrighted by Plaintiff Sortium. *(Fourth Amended Complaint ¶ 37).*

Plaintiff Sortium had its own input to the drawings and design specifications brought in by Defendant Hunger with the help of which the Modified Glove Display came into effect. *(Id. at ¶¶ 39, 41).* The Modified Glove Display however, turned out to be an outcome of a far different design, as opposed to what was discussed in the meeting with Defendant BTP. *(See Deposition of Michael Burkhalter 100:06-10, 101:05-12, 103:07-18).* Defendant BTP was however impressed and accepted the final product as agreed upon and as embodied in the Purchase Order dated October 19, 2009 (the only agreement) in the amount of $272,700.00 for 1400 such Display units. *(See Deposition of Michael Burkhalter 100:19-101:04; Fourth Amended Complaint ¶¶ 32-33).*

Defendant BTP alleges filed motion for summary judgment in order to dismiss count 8 of Fourth amended complaint.

## C.  STANDARD OF REVIEW

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (internal quotations omitted). To prevail on a Motion for Summary Judgment, the moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Fed. R. Civ. P. 56(c) requires a court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. *McGown v. Bridgestone/Firestone, Inc.*, Civil Action No. 9:05-CV-9, 2005 U.S. Dist. LEXIS 25598. All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574.587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), *citing United States v. Diebold,* 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

To establish copyright infringement, a plaintiff must prove ownership of a valid copyright and copying of constituent elements of the work that are copyrightable. Copyright ownership is shown by (1) proof of originality and copyrightability and (2) compliance with the applicable statutory requirements. *Compaq Computer Corp. v. Ergonome Inc.,* 387 F.3d 403(5th Cir. 2004), *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 400 (5th Cir. 2000). It is settled law that to obtain a valid copyright, as distinguished from a patent, the applicant need not show that the material in question is unique or novel; it need only be original. *Gelles-Widmer Co. v. Milton Bradley Co.*, 7 Cir. 1963, 313 F.2d 143, cert. denied, 373 U.S. 913, 83 S. Ct. 1303, 10 L. Ed. 2d 414; *Alfred Bell & Co. v. Catalda Fine Arts*, 2 Cir. 1951, 191 F.2d 99. Thus a work may be protected by copyright even though it is based on a prior copyrighted work or something already in the public domain if the author, through his skill and effort, has contributed a distinguishable variation from the older works. *Gelles-Widmer Co. v. Milton Bradley Co.*, *supra*; *Millworth Converting Corp. v. Slifka*, 2 Cir. 1960, 276 F.2d 443; *Alfred Bell & Co. v. Catalda Fine Arts, supra.* In such a case, of course, only those parts which are new are protected by the new copyright. *Dorsey v. Old Surety Life Ins. Co.,* 10 Cir. 1938, 98 F.2d 872. In determining the amount of originality required it is frequently stated that the standards are minimal and that in copyright law "originality means little more than a prohibition against copying." *Gelles-Widmer Co. v.*

*Milton Bradley Co., supra. Day-Brite Lighting, Inc. v. Sta-Brite Fluorescent Manufacturing Co.,* 5 Cir. 1962, 308 F.2d 377; *Alfred Bell & Co. v. Catalda Fine Arts, supra.* Nevertheless, something more than merely refraining from outright copying is required before a new variation on an old work has sufficient originality to be copyrightable. The author must add "some substantial, not merely trivial, originality." *Chamberlin v. Uris Sales Corp.,* 2 Cir. 1945, 150 F.2d 512, 513. The variation must be meaningful and must result from original creative work on the author's part. *Amsterdam v. Triangle Publications, Inc.,* 3 Cir. 1951, 189 F.2d 104; *Andrews v. Guenther Publishing Co.,* S.D.N.Y.1932, 60 F.2d 555; *Jeweler's Circular Publishing Co. v. Keystone Publishing Co.,* 2 Cir. 1922, 281 F. 83, cert. denied, 259 U.S. 581, 42 S. Ct. 464, 66 L. Ed. 1074; *McIntyre v. Double-A Music Corp.,* S.D.Cal.1959, 179 F. Supp. 160; *Alva Studios, Inc. v. Winninger,* S.D.N.Y.1959, 177 F. Supp. 265; *Smith v. George E. Muehlebach Brewing Co.,* W.D.Mo.1956, 140 F. Supp. 729.


### D. ARGUMENTS

i. **CREATIVE AND ORIGINAL ASPECTS OF THE SORTIUM GLOVE DISPLAY ARE COPYRIGHTABLE THEREFORE THE CLAIM FOR UNORIGINALITY CANNOT BE RELIED UPON**

Copyright ownership is established by proof of originality, copyrightability, and compliance with all applicable statutory formalities. *Jack Preston Wood: Design, Inc. v. B L Bldg. Co.,* Civil Action No. H-03-713, 2004 U.S. Dist. LEXIS 30511 at *12; *Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.,* 226 F.3d 387 at 393; *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396 at 400.


In *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 345-46, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991), the Supreme Court said, "The sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that **it possesses at least some minimal degree of creativity.... Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result**

**of copying.** *Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC,* Civil Action No.: SA-05-CV-750-XR, 2007 U.S. Dist. LEXIS 39751 at \*51-52.

Defendant BTP's interpretation that CAM's drawings served as the basis of the Modified Glove Displays, and Plaintiff Sortium has in no way contributed to the same, **is a mere farce.** Defendant CAM's representative clearly stated in his deposition that Plaintiff has input into the drawings and it's their (Sortium's) idea.

> Q. Okay.
>
> If you look at the bottom of these – of these drawings, can you read that to me?
>
> A. "Designs, models, engineering drawings, artwork, tooling and all preparatory work created  or furnished by Sortium are original and remain our
>
> exclusive property unless otherwise agreed upon in writing. No use of the above material shall be made except by written agreement.!!
>
> Q. Okay.
>
> What does that mean to you? Does it have any meaning to you?
>
> A. It would mean that this particular drawing is Sortium's idea
>
> --
>
> --
>
> --
>
> Q. Did Rick and Mason Sherwood have input into these drawings?
> A. Yes.
> *(Deposition of Jeff Skinner 15:08 - 17:11)*

Even if the idea of a clear roof was unoriginal, it required a lot of countless decisions to be made by the creator. *Danze & Davis Architects, Inc. v. Legend Classic Hom...,* 101 U.S.P.Q.2D (BNA) 1135 (2011). Sortium, in fact, made many decisions that made this particular clear roof original. With Sortium being CAM's customer, CAM agreed that it would not start manufacturing a product without having received the design specifications from its customer, and that it had already received these details prior to meeting with BTP. The final product was the collaborative effort of the Sherwoods and CAM's engineers with CAM's engineers merely creating the

engineering drawings of the concept created by Sortium. *(Deposition of Mark Herman 30:17-31:15, 37:19-38:01).*

Moreover, Eric Hunger did not give any details of the Glove Display design specifications to CAM. *(Deposition of Mark Herman 68:19-69:02).* This implies that Hunger, who was then working for Plaintiff Sortium provided the detail specifics to Sortium alone, who could then prepare the Modified Glove Display. Also , CAM copied the designs believing that these were not proprietary (Even though CAM placed Sortium's name on the engineering drawings at the request of Sortium) :

> Q. And by doing that, weren't you using the designs brought to you by Sortium to build those same units?
> A. We are saying Sortium brought those, I think in earlier testimony, I don't know where these designs came from; and I did not believe that they were proprietary, so that's why I had no problem of doing it because I thought most of the work was done by our engineers.
> *(Deposition of Mark Herman 91:22-92:06)*

Moreover, Plaintiff's drawings did serve as the basis for the Modified Glove Displays:

> **Q.** Do you recognize that to be a drawing created by your company or do you know?
> A. Well, the drawing created by our company would have our logo on it, so I don't know who created this because it -- it has Sortium on them.
> -
> -
> A. It's an engineering drawing….
> -
> -
> Q … Does it have a peaked roof?
> A. It's generally the same -- looks to be the same.
> Q. Okay. And it has a peaked roof?
> A. Yes.
> **Q.** And it has a cutout in the peaked roof, does it not?
> A. Yes
> **Q.** And over here to the left side of that document, does that show specifications as far as the size and so forth?
> A. Yes, it does.
> *(Deposition of Mark Herman 52:20-54:24).*

Defendant BTP claims the originality of the clear roof being their idea. However, they did not find it important to have any copyright registration done for the same idea. *(See BTP's Response*

*to Plaintiff's Request to Production of Documents, Request No. 48).* Ultimately, Defendant BTP's claim seems baseless, as they fail to produce documents that would save them from Plaintiff's copyright infringement claim. *(Id. at 12, 28).*

Finally, Michael Burkhalter, representative of Defendant BTP identifies that the changes noted down by Sortium representatives were not present in the final product and the final product was different:

> Q. When that came to you, it had incorporated the changes that they had put into their picture?
> A. If this is the display that they delivered to me, then, no, it's not.
> -
>
> -
>
> Q. Because when you get something delivered to you by somebody like Sortium, you're going to look at it to make sure that it's what you wanted, right?
> A. Yes.
> Q. Before you pay for it, right?
> A. Yes. I'm not sure we didn't pay half up front. But anyway, I don't remember.
> Q. Well, you ended up paying the whole thing. We talked about that.
> A. Uh-huh.
> Q. So at the time you did that and you looked at it, the one that Sortium delivered to you, it had the changes incorporated into it that they had put in their drawings and that you had directed them to do.
> A. There again, I had them put feet on it. And if this is the one he showed me, then they didn't incorporate
> -
>
> -
>
> Q. I said let's assume that the unit that they delivered to you, the physical unit, had incorporated into it the changes that you had asked them to make and that they had put into their drawings and that you accepted it that way. It had the changes in it.
> A. Yes.
> Q. And when you got that unit with the changes in it, it was then different than the unit that was in your conference room?
> A. Yes.
> *(Deposition of Michael Burkhalter 100:06-103:18).*

This is indicative of the fact that the changes brought in by Sortium belonged to them and not to BTP. Also, BTP used the modified Glove Displays and claim that the changes did not belong to Sortium, and still they accepted the final work product from Plaintiff.

All the above facts clearly indicates that Plaintiff is the original creators or "authors" of the Sortium Glove Display, which includes creative and original expression. Creative and original aspects of the Sortium Glove Display are copyrightable under United States law. Creative and original aspects of the Sortium Glove Display include a pitched roof atop a box-shaped cabinet, giving the visual impression of a shack or shed, with the pitched roof including a pair of triangular gables and a pair of rectangular transparent roof panels that add a greenhouse effect to the structure. The pitched transparent roof panels and gables are oriented so that the gables are in fore and aft positions respectively, giving the most clear impression of a pitched roof from the front of the Sortium Glove Display. These features were the independent, original creations of authors Mason Sherwood and Mark Franke. The pitched roof of the Sortium Glove Display falls under the federal copyright statute's definition of "Pictorial, graphic, and sculptural works", which the statute describes as including "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans." *(FAC ¶¶ 165-66)*.

## ii. DEFENDANT BTP'S SECOND CLAIM FAILS DUE TO COPYING OF COPYRIGHTED PLANS

Copyright infringement occurs when a copyrighted work is reproduced, **distributed,** performed, **publicly displayed**, or made into a **derivative work** without the permission of the copyright owner.[1] 17 U.S.C. § 102(a)(5) protects "pictorial, graphic, and sculptural works," which includes "technical drawings, including architectural plans. *Interplan Architects, Inc. v. C.L. Thomas, Inc.,* Civil Action No. 4:08-cv-03181, 2010 U.S. Dist. LEXIS 114306 at *19.

As cited in *Glasscraft Door I, L.P. v. Seybro Door & Weathersh...,* Copy. L. Rep. (CCH) P29, 841 (D. Tex., 2009), in order to prove copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) actionable copying. *Galiano v. Harrah's Operating Co., Inc.,* 416 F.3d 411, 414 (5th Cir. 2005). Actionable copying requires a finding of (1) factual copying and (2) substantial similarity. *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir. 2003). Plaintiff may nevertheless establish factual copying without any proof of access "[i]f the two works are so strikingly similar as to preclude the possibility of independent creation. . . ." *Peel & Co. v. Rug Mkt.,* 238 F.3d 391 at 395. The works must be "so strikingly similar that

[1] See Definitions at: http://www.copyright.gov/help/faq/faq-definitions.html

copying is the only realistic basis for the similarities at hand." *Armour v. Knowles,* 512 F.3d 147 at 156 n.19 (internal quotation marks omitted) (quoting 4 Nimmer on Copyright § 13.02(B) at 28.1 (2007)). *Am. Registry of Radiologic Technologists v. Bennett,* 939 F. Supp. 2d 695, 707 (D. Tex., 2013).

Plaintiff has certainly contributed in the drawings of the Modified Glove Display. (*See Count i*). Undoubtedly, Defendant BTP has copied such drawings, distributed, displayed and prepared derivatives of the same by continuously manufacturing the gloves, distributing and displaying them through various retailers.

iii.   **DEFENDANT BTP'S THIRD CLAIM FAILS AS SELECTION, COORDINATION, AND ARRANGEMENT OF UNPROTECTABLE ELEMENTS RENDERS A WORK COPYRIGHTABLE**

Pictorial, graphic, and sculptural works may be two-or three-dimensional and include works such as maps, fine or graphic art, diagrams, models, and technical drawings. 17 U.S.C.S. § 101. If an item qualifies as a "useful article" under the Copyright Act, 17 U.S.C.S. § 101 et seq., however, it is entitled to copyright protection only to the extent that its artwork or creative design is separable from the utilitarian aspects of the work. *Galiano v. Harrah's Operating Co.,* 416 F.3d 411 (5th Cir. 2005).

Despite the fact that useful articles are not copyrightable, **[a] work may be copyrightable even though it is entirely a compilation of unprotectable elements based on the original way in which the author has selected, coordinated, and arranged the elements of his or her work.** *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.,* 808 F. Supp. 2d 542, 551 (D.N.Y 2011); *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996 at 1004 (2d Cir. 1995) (quoting *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 358, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). The selection, arrangement, and manner of presentation in a compilation may provide the user with a method or systematic manner of accessing the uncopyrightable facts. Thus, copyright law protects only that part of a compilation that the reader actually uses for selection of facts that the reader wants to know. *Engineering Dynamics v. Structural Software,* 26 F.3d 1335, 1346 (5th Cir. 1994). Further, an original work need not be novel and may be crude or obvious. *Feist,* 499

U.S. at 345-46. To be sure, the requisite level of creativity is extremely low; **even a slight amount will suffice**. *Id.* at 346.

Plaintiff Sortium limits its copyright claim to the transparent peaked roof, the final product of which was made of plexiglass. Defendant BTP seems to claim that the design of the roof was theirs, yet are unsure of the actual material used to prepare the same:

> **Q.** And so do you know who decided to use the material that actually
> made up that clear top or what that material is?
> A. I assume it's Plexiglass or something like that. I have no idea.
> *(Deposition of Michael Burkhalter 18:06-10).*

The composition, selection and presentation of the material were solely the effort put in by Plaintiff Sortium. Given the Court's opinion "[the] determination of whether Plaintiff's pitched roof is sufficiently original or separable to be copyrighted is a factual issue that is inappropriate for determination at this stage given the allegations in this case."

iv. **PLAINTIFF IS ENTITLED TO TREBLE DAMAGES AND ATTORNEYS' FEES**

Plaintiff Sortium has clearly provided the reason for the delay in filing for copyright registration, which was due to some clerical deficiency. (*FAC ¶ 160).* Even, the Court did not show any concerns regarding the delay in filing the application. *See Memorandum Opinion and Order, March 31, 2013, page 30-31).* Plaintiff Sortium received a certificate of registration, with an effective date of April 26, 2012. *(See Copyright Certificate of Registration).* A certificate of registration creates a rebuttable presumption of validity. *Norma Ribbon & Trimming, Inc. v. Little,* 51 F.3d 45, 47 (5th Cir. 1995); *Lakedreams v. Taylor,* 932 F.2d 1103, 1108 n. 10 (5th Cir. 1991); *Buckward Digital Servs. v. Millar Instruments,* Civil Action No. H-05-1728, 2006 U.S. Dist. LEXIS 29954 at *1; *Compliance Review Servs. v. Davis-Osuawu,* Copy. L. Rep. (CCH) P29, 323; 17 U.S.C. § 410. Further, in assessing damages, a court may award damages greater than a reasonable royalty so that the award is adequate to compensate for the infringement. The court also may award damages greater than the infringer's net profits resulting from the infringement. *Joy Mfg. Co. v. CGM Valve & Gauge Co.,* 730 F. Supp. 1387 (1987)

Since the copyright registration does not seem to be invalidated, therefore Plaintiff Sortium's claim of treble damages and that of attorney fees shall survive. Besides, nowhere does Defendant

BTP cite any authority in supporting their claim of Plaintiff's delay in filing copyright application. Moreover, Defendant BTP has even failed to produce relevant documents that would in any way support its contention. *(See BTP's Request to Production of Documents, Request No. 12).*

### E.  CONCLUSION

For all the foregoing reasons, Plaintiff submits that Defendant Big Time Products, Inc. has failed to carry the burden of establishing that there are no genuine issues of fact in dispute and Defendant Big Time Products, Inc. is entitled to judgment as a matter of law. Accordingly, Plaintiff requests that this Court deny Defendant's motion for summary judgment.

Respectfully submitted,

The Law Firm of Gregory G. Jones, P.C.

By:  _____*/s/ Gregory G. Jones*_____
Gregory G. Jones
State Bar No. 10889370

950 E. Highway 114, Suite 160
Southlake, Texas 76092
Telephone: (817) 424-9001
Facsimile:  (817) 424-1665

ATTORNEY FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on Counsel of record by facsimile transmittal on February 12, 2014.

*/s/ Gregory G.Jones*
Gregory G. Jones