IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SORTIUMUSA, LLC,                     §
                                     §
            Plaintiff,               §
                                     §
V.                                   §        No. 3:11-cv-1656-M
                                     §
ERIC HUNGER, ET AL.,                 §
                                     §
            Defendants.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

On July 1, 2014 Defendants Big Time Products, LLC ("Big Time") and Eric
Hunger ("Hunger") and Chicago American Manufacturing, LLC ("CAM") filed
applications for attorneys' fees under 17 U.S.C. § 505. *See* Dkt. Nos. 168 & 169. United
States District Judge Barbara M.G. Lynn referred the motions to the undersigned
magistrate judge for hearing, if necessary, and recommendation or determination. *See*
Dkt. No. 176. Plaintiff SortiumUSA, LLC ("Sortium") has not filed a response.

For the reasons explained below, Defendant Big Time Products, LLC's Amended
Application for Costs, Including Attorneys' Fees [Dkt. No. 168] and Defendants Eric
Hunger and Chicago American Manufacturing LLC's Application for Attorneys' Fees
[Dkt. No. 169] should be granted in part and denied in part.

**Background**

On July 13, 2011, Sortium filed its Original Complaint, asserting 20 counts
against Defendants. "The gravamen of Plaintiff's Complaint is that [former employee]

-1-

Hunger, on behalf of CAM, sold to Big Time, Sortium's previous client, a garden glove display using Sortium's designs and other proprietary information wrongfully retained by Hunger, and/or wrongfully used by CAM." Dkt. No. 66 at 4.

On March 23, 2012, Judge Lynn conducted a hearing on Big Time's motion to dismiss, granted the motion, and instructed Sortium to file an amended complaint consistent with her ruling. *See* Dkt. No. 15 at 25-26. Sortium filed its First Amended Complaint on April 27, 2012. *See* Dkt. No. 18. This complaint asserted for the first time claims under the Copyright Act. *See id.*

Sortium filed a Second Amended Complaint on May 30, 2012 with the Court's leave. *See* Dkt. Nos. 27 & 28. Judge Lynn considered motions to dismiss by all defendants at a January 17, 2013 hearing. *See* Dkt. No. 65. Judge Lynn then granted in part and denied in part the defendants' Federal Rule of Civil Procedure 12(b)(6) motions in a detailed written opinion. *See* Dkt. No. 66.

Sortium then filed a Third Amended Complaint. *See* Dkt. No. 70. Because Defendants CAM and Hunger believed that Sortium continued to include allegations barred by Judge Lynn's order on their motions to dismiss, the parties agreed that a fourth amendment was appropriate, and Judge Lynn granted leave to file another amended complaint. *See* Dkt. Nos. 77 & 80.

The Fourth Amended Complaint was then filed on July 12, 2013. *See* Dkt. No. 81. On May 22, 2014, Judge Lynn held a hearing on Defendants' motions for summary judgment [Dkt. Nos. 106 & 109] and Defendants' motions to strike and exclude [Dkt. Nos. 125 & 144]. For the reasons stated on the record at the hearing, Defendants'

motions were granted, and the Fourth Amended Complaint was dismissed with prejudice. *See* Dkt. Nos. 165 & 166.

Judge Lynn awarded costs of court and ordered Defendants to file any request for attorneys' fees within two weeks. *See* Dkt. No. 166. Costs have now been taxed in the amount of $4,052.12 for CAM and $2,063.35 for Big Time. *See* Dkt. Nos. 173 & 175.

The undersigned now considers Defendants' motions for attorneys' fees.

## Legal Standards

In actions for copyright infringement, the Court may award costs and "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The United States Court of Appeals for the Fifth Circuit has held that awards of attorneys' fees in copyright cases are the rule, rather than the exception, and that they should be awarded routinely. *See Hogan Sys. Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cir. 1998). In determining whether a fee award is appropriate, the Court considers the factors set out in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994): "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Virgin Records, Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008).

If the Court determines that the prevailing party is to receive fees, the Court must use the familiar "lodestar" method to determine the reasonableness of the requested attorneys' fees. *See Lance v. Freddie Records, Inc.,* 986 F.2d 1419 (table), 1993 WL 58790, at *3 (5th Cir. Feb. 17, 1993). The lodestar is calculated by multiplying

the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended by presenting adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended, and there is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (*citing Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984)). The relevant legal community is the community in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The burden is on the movant to "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. Generally, the reasonable hourly rate for a community is established through affidavits of other attorneys practicing in the jurisdiction. *See Tollett*, 285 F.3d

at 368.

After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19; *see also Saizan*, 448 F.3d at 800. Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins,* 7 F.3d at 457. And the United States Supreme Court has barred any use of the sixth factor and advised that the second factor generally cannot be used as a ground for enhancing the award. *See Wherley v. Schellsmidt*, No. 3:12-cv-242-D, 2014 WL 3513028, at *1 n.2 (N.D. Tex. July 16, 2014). Further, "[m]any of the *Johnson* factors are presumably fully reflected in the lodestar amount, however, so such modifications are proper only in certain rare and exceptional cases, supported

by both specific evidence on the record and detailed findings." *Id.* at *5 (internal quotation marks omitted). And "[t]he lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizen*, 448 F.3d at 800.

The undersigned recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, has recently been called into question. *See Perdue*, 559 U.S. at 552-53; *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013). But in a recent opinion, the United States Court of Appeals for the Fifth Circuit, without comment or reference to the Supreme Court's decision in *Perdue*, continued to utilize the approach laid out by this Court. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502-03 (5th Cir. 2013). *But see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663-64 (5th Cir. 2012) (analyzing whether any changes brought about by *Perdue* apply to bankruptcy attorneys' fees calculations); *but see also In re ASARCO, L.L.C.*, 751 F.3d 291, 295-96 (5th Cir. 2014) (following *Pilgrim's Pride*).

## Analysis

In this case, Big Time and Hunger and CAM request an award of all attorneys' fees incurred by Defendants against Sortium's copyright claims since the time that the claims were first asserted on July 12, 2013. *See* Dkt. No. 167-1 at 4; Dkt. No. 169-1 at 4, 75. That is, Big Time seeks $103,965.50 in attorneys' fees paid to Holland & Knight LLP, *see* Dkt. No. 167-1, and $54,222.00 in attorneys' fees paid to Gardere Wynne Sewell LLP., *id.* at 9, 73, for a total requested award of $158,187.50. Defendants Eric

Hunger and CAM seek $8,040.00 in attorneys' fees, comprised of $3,904.00 in attorneys' fees due to Cohen, Salk & Huvard, P.C., and $4,136.00 in attorneys' fees for Gary Gillen who worked at Eclipse Group and McCracken & Frank, LLC. *See* Dkt. No. 169-1 at 5; Dkt. No. 169-2 at 4.

<u>Appropriateness of Granting Attorneys' Fees</u>

Defendants have established that an award of attorneys' fees is appropriate. The history of this litigation and the conduct of Plaintiff – which is well known to Judge Lynn and the parties – demonstrate at least the "motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" that justifies attorneys' fees under the Copyright Act. *See Virgin Records*, 512 F.3d at 726. That is, Judge Lynn twice granted, in large part or in whole, motions to dismiss and then granted summary judgment on Plaintiff's claims in its Fourth Amended Complaint. When ruling on Big Time's motion to dismiss the initial complaint, which was considered at a hearing on March 23, 2012, Judge Lynn indicated that she was "seriously skeptical about the claims ... against Big Time, and whether these claims have legal legs to them." Dkt. No. 15 at 4. At that early date, Judge Lynn warned Plaintiff's counsel of the "Rule 11 obligations with respect to [his] pleading violations of the law that are not legally tenable" and that continuing to assert frivolous claims would lead to a "different kind of chat down the road." *Id.* Notwithstanding this admonition, Plaintiff continued to assert meritless claims through four amendments to his complaint and pursued this litigation for over two additional years.

<u>Attorneys' Fees For Hunger and CAM</u>

Defendants Hunger and CAM seek $8,040.00 in attorneys' fees directly related to Plaintiff's copyright claim, comprised of $3,904.00 in attorneys' fees due to Cohen, Salk & Huvard, P.C., and $4,136.00 in attorneys' fees for Gary Gillen, who worked at Eclipse Group and McCracken & Frank, LLC. *See* Dkt. Nos. 169-1 & 169-2.

<u>Cohen, Salk & Huvard, P.C.</u>

CAM and Hunger request reimbursement of fees incurred for 5.3 hours of work performed by attorney Richard M. Hoffman and for 6.5 hours of work performed by attorney Matthew Szwajkowski. *See* Dkt. No. 169-1. The requested hourly billing rate for Mr. Hoffman is $325 and for Mr. Szwajkowski, $225. *See id.* Hunger and CAM's Application for Attorneys' Fees is supported by the Declaration of Richard M. Hoffman and billing statements from Cohen, Salk & Huvard, P.C. *See id.*

Mr. Hoffman declares that he is an experienced commercial litigation attorney who was licensed to practice law in 1990 and has been personally involved in multi-party lawsuits in federal and state court and is familiar with the fees customarily charged for the services of attorneys and legal personnel of qualifications and experience comparable to himself and Mr. Szwajkowski during the period in question. Dkt. No. 169-1 at 3 & 5. He declares that the work for which Cohen, Salk & Huvard, P.C. seeks an award of attorneys fees' was limited to the amount of fees, costs, and expenses incurred by CSH and chargeable to CAM and Hunger with respect to Sortium's Copyright Act claims. *Id.* at 4. Mr. Hoffman declares that the number of hours spent on this matter and the rates charged are "fair, reasonable, and appropriate

for the services provided ... for these cases." *Id.* at 5. The billing records generally reflect the work performed by Mr. Hoffman and Mr. Szwajkowski, with a narrative description of the work done and the number of hours that it took to complete the work. *See* Dkt. No. 169-1 at 7-9.

The undersigned observes that Mr. Hoffman's affidavit does not contain evidence – apart from his boilerplate statement that the rates charged are fair, reasonable, and appropriate – that the requested rates are in line with those prevailing in this community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Mr. Hoffman and Mr. Szwajkowski are Illinois attorneys, and Mr. Hoffman does not provide any evidence to establish the prevailing market rates for similar services in the legal market encompassing this judicial district and division. *See Tollett*, 285 F.3d at 368 ("Generally, the reasonably hourly rate for a particular community is established through affidavits of other attorneys practicing there."). But it is well-established that the Court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services. *See Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.,* 526 F.2d 865, 868 (5th Cir. 1976); *see also Vanliner Ins. Co. v. DerMargosian,* No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees).

The undersigned finds that the prevailing rate in Dallas County for attorneys with the experience, skill, and ability of Mr. Hoffman is similar to or higher than the rates and fees charged by Cohen, Salk & Huvard, P.C. The undersigned finds, based

on the information and record before the Court, including the Declaration of Richard M. Hoffman, that the requested hourly rate for Mr. Hoffman in this case is reasonable and is within the market rate for attorneys handling this type of litigation in the Dallas area. *See Szijjarto v. McCarrell*, No. H-11-4226, 2014 WL 555122, at *3-*4 (S.D. Tex. Feb, 12, 2014) (quoting *Fluor Corp. v. Citadel Equity Fund Ltd.*, No. 3:08-cv-1556-B, 2011 WL 3820704, at *5 (N.D. Tex. Aug. 26, 2011)) (finding reasonable an hourly rate of $350 for a partner and $250 for an associate and observing that in "cases involving Texas lawyers, the hourly rates range from $220 for associates to $510 for senior partners); *see also Powell v. Procollect, Inc.*, No. 11-cv-846-B, Dkt. No. 30 (N.D. Tex. July 18, 2012) (finding an average hourly rate of $250, with hourly rates from $100 to $400 per hour for each attorney, to be reasonable in this community).

But the undersigned is unable to find that CAM and Hunger have produced satisfactory evidence that the requested rates for Mr. Szwajkowski are in line with those prevailing in this community for similar services by lawyers of reasonably comparable skill, experience, and reputation. The evidence provided by CAM and Hunger simply does not address the qualifications of Mr. Szwajkowski, except to note that he was, until recently, an associate at Cohen, Salk & Huvard, P.C. whose billing rate on this case was $225 per hour. *See* Dkt. No. 169-1 at 2. The undersigned has no basis, on this record, to find that Mr. Szwajkowski's requested rate is reasonable. While this deficiency may justify the denial of attorneys' fees for Mr. Szwajkowski entirely, the undersigned notes that Judge Lynn has recently addressed such a deficiency in another case. Where a plaintiff requesting attorneys' fees did not submit

evidence of an associate's background information and failed to supply any supporting documentation to determine the prevailing market rate in the Dallas area, Judge Lynn reduced the requested rate by ten percent. *See S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2014 WL 1116700, at *6 (N.D. Tex. Mar. 20, 2014). Accordingly, the undersigned recommends that the Court reduce the requested rate here by ten percent and award attorneys' fees for Mr. Szwajkowski at a rate of $202.50 per hour.

The undersigned therefore finds the appropriate lodestar here to be calculated as 5.3 hours for Mr. Hoffman at $325.00 an hour ($1,722.50) and 6.5 hours for Mr. Szwajkowski at a rate of $202.50 an hour ($1,316.25), for a total award of $3,038.75. This amount does not include the $719.00 in requested costs already taxed by the Court.

The undersigned has considered the *Johnson* factors but notes that the lodestar is presumed to be reasonable and should only be modified in exceptional cases. Here, Defendants do not seek an enhancement of their attorneys' fees, and there are no other exceptional circumstances. Moreover, Plaintiff did not file a response to the application for attorneys' fees, so the Court has no information before it to suggest that the amount of fees sought for Mr. Hoffman and Mr. Szwajkowski is beyond the necessary scope of work required to defend against Plaintiff's Copyright Act claims. *See S&H Indus.,* 2014 WL 1116700, at *6 ("As there is no evidence in support and no parties have moved for enhancement or reduction from the lodestar amount, the lodestar amount is presumed reasonable.").

Accordingly, the undersigned recommends that Sortium be ordered to reimburse

CAM and Hunger the amount of $3,038.75 for the work of Mr. Hoffman and Mr. Szwajkowski.

Gary Gillen

CAM and Hunger request reimbursement of fees incurred for 12.8 hours of work, including 10.4 hours of work performed by attorney Gary Gillen, 2.0 hours of work performed by an attorney identified as "MDJ," and 0.4 hours of work performed by attorney Anna M. Vrandenburgh. *See* Dkt. No. 169-2. The requested hourly billing rate for Mr. Gillen is $340. *See id.* Hunger and CAM's Application for Attorneys' Fees is supported by the Declaration of Gary Gillen and billing statements from McCracken & Frank, LLC and The Eclipse Group LLP. *See id.*

Mr. Gillen declares that he is an experienced attorney who was licensed to practice law in 1992, is familiar with and has extensive experience in copyright law, and has been actively involved in a number of copyright lawsuits over the years. *See id.* at 2. He is also familiar with the costs and expenses incurred by CAM for the legal services he rendered as well as the fair, usual, and customary charges for representation in cases such as this. *See id.* at 3. He declares that the work for which Defendants seek an award attorneys' fees was limited to the amount of fees, costs, and expenses chargeable to CAM and Hunger with respect to Sortium's Copyright Act claims. *See id.* Mr. Gillen further declares, and the undersigned finds, that the number of hours spent on this matter and the rates charged are "fair, reasonable, and appropriate for the services provided ... for these cases." *Id.* at 4-5.

The billing records generally reflect the work performed by Mr. Gillen with a

narrative description of the work done and the number of hours that it took to complete the work. *See id.* at 7-12. Although Mr. Gillen does not provide evidence to establish the prevailing market rate for similar services by lawyers of reasonably comparable skills, experience, and reputation, the undersigned finds that the requested hourly rate of $340 is reasonable and is within the market rate for attorneys handling this type of litigation in the Dallas area. That is, the undersigned finds that the prevailing rate in Dallas County for attorneys with the experience, skill, and ability of CAM and Hunger's attorneys is, if anything, higher than the rates and fees charged by Mr. Gillen. The undersigned finds, based on the information and record before the Court, including the Declaration of Gary Gillen, that the requested hourly rate of $340 is reasonable and are within the market rate for attorneys handling this type of litigation in the Dallas area.

The undersigned finds the appropriate lodestar here to be calculated as 10.4 hours for Mr. Gillen at $340.00 an hour, for a total of $3,536.00. This amount does not include the $37.59 in requested costs already taxed by the Court. Nor does it include billing for two other attorneys, Anna M. Vrandenburgh and an individual identified as "MDJ," *see* Dkt. No. 169-2 at 7-11, whose qualifications and conduct in this lawsuit are nowhere discussed in this application for attorneys' fees. The billing records attached to Mr. Gillen's declaration are insufficient to establish the reasonableness of the hourly rate or hours billed by Ms. Vrandenburgh and "MDJ." *See* Dkt. No. 162-2 at 7-12. Indeed, the only work apparently completed by Ms. Vrandenberg was "Review email from G. Gillen, including attachments; respond thereto." *Id.* at 11. "Litigants take their

chances when submitting such fee applications, as they provide little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision." *Kellstrom*, 50 F.3d at 327. "Billing entries must explain the subject matter of the task enough to allow the court to determine whether the time was reasonably expended." *Inclusive Communities Project, Inc. v. Texas Dep't of Hous. and Cmty. Affairs*, No. 3:08-cv-546-D, 2013 WL 598390, at *4 (N.D. Tex. Feb. 15, 2013). When the Court determines that billing entries are vague, it can reduce the allowed time for the entries. *See id.*

The Court has considered the *Johnson* factors but notes that the lodestar is presumed to be reasonable and should only be modified in exceptional cases. Here, Defendants do not seek an enhancement of their attorneys' fees, and there are no other exceptional circumstances. Moreover, Plaintiff did not file a response to the application for attorneys' fees, so the Court has no information before it to suggest that the amount of fees sought is beyond the necessary scope of work required to defend against Plaintiff's Copyright Act claims. *See S&H Indus.,* 2014 WL 1116700, at *6.

Accordingly, the undersigned recommends the Court order payment of a total of $3,536.00 for the work done by Mr. Gillen on behalf of CAM and Hunger.

Attorneys' Fees For Big Time

Defendant Big Time seeks $158,187.50 in attorneys' fees directly related to Plaintiff's copyright claims, comprised of $103,965.50 in attorneys' fees due to Holland & Knight LLP and $61,820.59 in attorneys' fees due to Gardere Wynne Sewell LLP. *See*

-14-

Dkt. No. 167-1.

Holland & Knight, LLP

Big Time appears to request reimbursement of fees incurred for 136.6 hours of work performed by attorney Gregory J. Digel and for 122.2 hours of work performed by attorney Paul Vranicar. *See* Dkt. No. 167-1. The requested hourly billing rate for Mr. Digel is $515 and for Mr. Vranicar, $265. *See id.* Big Time's Application for Attorneys' Fees is supported by the Declaration of Gregory J. Digel and voluminous billing statements from Holland & Knight LLP. *See id.*

As an initial matter, the undersigned notes that it would have been appropriate for Big Time to clearly summarize the hours of work performed by these attorneys rather than attach dozens of pages of billing records for the Court's review and calculation. Because Big Time has not done so, the Court may only speculate as to how Big Time came up with the $103,965.50 requested.

Mr. Digel declares that he is an experienced commercial litigation attorney whose practice involves commercial litigation including intellectual property, unfair competition, and business torts. *See id.* at 5. He has been admitted to practice law in Georgia since 1974. *See id.* Mr. Digel states that he is familiar with the experience and relevant background of himself and attorney Paul Vranicar and the rates charged by other lawyers and practices having similar experience in Atlanta and "other jurisdictions." *Id.* at 5-6. He declares that the number of hours spent on this matter was reasonable and necessary to the defense of the copyright infringement claim and that the rates charged are reasonable and represent the prevailing market rates in the

legal community for similar services by lawyers and paralegals of reasonable comparable skills, experience, and reputation. *See id.* at 5-6. But the declaration does not address the prevailing market rate in this community for lawyers of similar skills, experience, and reputation as Mr. Digel and does not address in any way the qualifications of Mr. Vranicar. *See id.* at 3-7.

The billing records generally reflect the work performed by Mr. Digel, Mr. Vranicar, and other Holland & Knight employees, with a narrative description of the work done and the number of hours that it took to complete the work. *See* Dkt. No. 167-1 at 9-66. Because Big Time provides no evidence to establish the prevailing market rate in the Dallas community for lawyers of similar skills, experience, and reputation as Mr. Digel, the undersigned cannot find that the $515 hourly rate sought by Mr. Digel is reasonable and within the market rate for attorneys and paralegals handling this type of litigation in the Dallas area. Nor can the undersigned find, based on this record, that "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Fluor Corp.,* 2011 WL 3820704, at *5 (citing *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992)).

Although the undersigned is aware that hourly rates of over $500 are charged in this community for a select group of top attorneys, *see Szijjarto*, 2014 WL 555122, at *4, Mr. Digel has not established that the $515 hourly rate that he seeks is reasonable. This is particularly so since the billing records indicate that a significant amount of his work on this matter may well have been done by a less-experienced attorney who charged a lower rate. For example, Mr. Digel seeks his full $515 hourly

rate for numerous hours of seeking and reviewing discovery, which perhaps could have been done by a less experienced attorney. In this district, awards of fees at rates exceeding $500 per hour are generally reserved for specialized tasks in complex cases that few attorneys are capable of handling. *See Fluor*, 2011 WL 3820704, at *5.

The undersigned finds the appropriate lodestar here to be calculated as 136.6 hours for Mr. Digel at $400 an hour, for a total of $54,640.00. *See Powell v. Procollect, Inc.*, No. 11-cv-846-B, Dkt. No. 30 (N.D. Tex. July 18, 2012) (finding an average hourly rate of $250, with hourly rates from $100 to $400 per hour for each attorney, to be reasonable in this community). This amount does not include any of the requested costs already taxed by the Court. This reduced hourly rate, which is at the high end of the rates found reasonable in this community, reflects both the knowledge and experience of Mr. Digel and the fact that many of the tasks for which he seeks reimbursement might have been performed by a less-experienced attorney. The Court has considered the *Johnson* factors but notes that the lodestar is presumed to be reasonable and should only be modified in exceptional cases. Here, Defendants do not seek an enhancement of their attorneys' fees, and there are no other exceptional circumstances. Moreover, Plaintiff did not file a response to the application for attorneys' fees, so the Court has no information before it to suggest that the amount of fees sought is beyond the necessary scope of work required to defend against Plaintiff's Copyright Act claims. *See S&H Indus.*, 2014 WL 1116700, at *6.

But the undersigned is unable to find that Big Time has produced satisfactory evidence that the requested rates for Mr. Vranicar and the other Holland & Knight

-17-

employees are in line with those prevailing in this community for similar services by lawyers of reasonably comparable skill, experience, and reputation. The evidence provided by Big Time simply does not address the qualifications of Mr. Vranicar, except to note that his billing rate on this case was $265 per hour. *See* Dkt. No. 167-1 at 5. The undersigned has no basis, on this record, to find that Mr. Vranicar's requested rate is reasonable. The undersigned is unwilling to make a finding that Mr. Vranicar is entitled to the requested $265 hourly rate for his 122.2 hours of work on this case without any evidentiary support to justify it. While this deficiency may justify the denial of attorneys' fees for Mr. Vranicar entirely, the undersigned will again reduce the rate requested. *See S&H Indus.,* 2014 WL 1116700, at *6. Accordingly, the undersigned recommends that the Court reduce the requested rate here to match the rate due to Mr. Szwajkowski of $202.50 per hour.

The undersigned recommends denying attorneys' fees sought for the other attorneys and paralegals whose participation in this case is documented in the 55 pages of billing records attached to Big Time's motion. The qualifications of these lawyers and, indeed, their identities are not addressed in Mr. Digel's declaration. *See id.* at 3-7. The undersigned cannot conclude that Big Time has produced satisfactory evidence that the requested rates are in line with those prevailing in this community for similar services by lawyers of reasonably comparable skill, experience, and reputation or that the number of hours expended by them were reasonably expended.

Accordingly, the undersigned recommends that Sortium be ordered to reimburse Big Time the amount of $54,640.00 for the work of Mr. Digel and $24,745.50 for the

work of Mr. Vranicar – for a total award for these attorneys' fees of $79,385.50.

Gardere Wynn Sewell LLP

Finally, Big Time seeks $61,820.59 in attorneys' fees for the time billed on this case by attorneys Peter Loh and Stacey Obenhaus and paralegal Nita Overton since July 12, 2013, the date on which Sortium first filed a complaint in which the only claim asserted against Big Time was copyright infringement. *See* Dkt. No. 167-1 at 74-75. Big Time's Application for Attorneys' Fees is supported by the Declaration of Peter Loh and billing statements from Gardere Wynne Sewell LLP, a law firm that served as local counsel for Big Time. *See id.*

Mr. Loh declares that he is an experienced attorney who was licensed to practice law in 2002 and has experience in commercial litigation, copyright litigation, and appellate practice in both state and federal courts. *See id.* at 74. He also reports that Mr. Obenhaus is an attorney in the trial section of the Gardere firm with 26 years of litigation experience, which includes representing members of the Recording Industry of America in copyright lawsuits filed in this district and throughout Texas. *See id.* at 75. Mr. Loh seeks reimbursement for himself at the rate of $455 per hour; for Mr. Obenhaus at a rate of $467.73 per hour; and for paralegal Nita Overton, whose qualifications are not addressed, at the rate of $210 per hour. *Id.*

The billing records generally reflect the work performed by Mr. Loh, Mr. Obenhaus, and Ms. Overton, with a narrative description of the work done and the number of hours that it took to complete the work. *See id.* at 76-106. Mr. Loh does not provide evidence to establish the prevailing market rate in this community for similar

services by lawyers of reasonably comparable skills, experience, and reputation and does not assert that any of the requested by Big Time rates are in line with those prevailing rates. Moreover, he does not contend that the amount of time expended as set forth in the billing records was reasonable and necessary to the defense of the copyright infringement claim. *See id.* a 74-75. Mr. Loh also does not provide any evidence for the Court to determine whether the representation by Big Time by himself, charging $455 per hour, Mr. Obenhaus, charging $467.73 per hour, or Ms. Overton, charging $210.00 per hour, was reasonable. Given the straightforward nature of Sortium's claims, Big Time has failed to establish that the full reimbursement of the requested attorneys' fees is appropriate.

Notwithstanding the deficiencies in Mr. Loh's declaration, the undersigned finds that Mr. Loh is entitled to attorneys' fees for the legal services documented in the billing records. The records reflect that Mr. Loh billed a total of 133.3 hours, at a rate of $455 per hour, in defending against Sortium's copyright claims. *See* Dkt. No. 167-1 at 74-106. The Court should not award the requested attorneys' fees incurred in connection with Big Time's unsuccessful Rule 11 motion. *See* Dkt. No. 167-1 at 84. Accordingly, Mr. Loh's billing should be reduced by 0.5 hours and no fees of Mr. Obenhaus should be reimbursed. *See id.* at 84. The undersigned finds that the 132.8 hours billed by Mr. Loh, and the 0.7 hours billed by paralegal Nita Overton, *see id.* at 86, were reasonably expended on litigation of Plaintiff's copyright claims.

Because Big Time again provides no evidence to establish the prevailing market rate in the Dallas community for lawyers and paralegals of similar skills, experience,

and reputation as Mr. Loh and Ms. Overton, the undersigned cannot find that the $455 hourly rate requested for Mr. Loh and the $210 per hour rate for Ms. Overton are reasonable and within the market rate for attorneys and paralegals handling this type of litigation in the Dallas area. A review of the billing records suggests that many of the tasks handled by Mr. Loh might have been conducted by a less-experienced attorney who charged a lower rate. Again, in this district, awards of fees at rates significantly higher than the median rate of a Texas attorney are generally reserved for specialized tasks in complex cases that few attorneys are capable of handling. *See Fluor*, 2011 WL 3820704, at *5. Moreover, at least for consumer law cases, the large firm average paralegal rate in Texas is $87 per hour, and, as of 2010-2011, 41.7% of all Texas paralegals had a billable rate between $75 and $149. *See Szijjarto*, 2014 WL 555122, at *4.

The undersigned finds the appropriate lodestar here to be calculated as 132.8 hours for Mr. Loh at $400 an hour, for a total of $53,120.00. *See Powell v. Procollect, Inc.*, No. 11-cv-846-B, Dkt. No. 30 (N.D. Tex. July 18, 2012) (finding an average hourly rate of $250, with hourly rates from $100 to $400 per hour for each attorney, to be reasonable in this community). This amount does not include any of the requested costs already taxed by the Court. This reduced hourly rate, which is at the high end of the rates found reasonable in this community, reflects both the knowledge and experience of Mr. Loh and the fact that many of the tasks for which he seeks reimbursement might have been performed by a less-experienced attorney. The undersigned further finds the appropriate lodestar for Ms. Overton here to be calculated as 0.7 hours at

$150 per hour, for a total of $105.00. *Cf. Rolex Watch U.S.A., Inc. v. Mills*, No. 3:12-cv-61-L, 2012 WL 5903782, at *5-*6 (N.D. Tex. Nov. 26, 2012) (awarding fees in a trademark case based on rates of $250 per hour for a Dallas attorney and $125 per hour for a paralegal). The Court has considered the *Johnson* factors but notes that the lodestar is presumed to be reasonable and should only be modified in exceptional cases. Here, Defendants do not seek an enhancement of their attorneys' fees, and there are no other exceptional circumstances. Moreover, Plaintiff did not file a response to the application for attorneys' fees, so the Court has no information before it to suggest that the amount of fees sought is beyond the necessary scope of work required to defend against Plaintiff's Copyright Act claims. *See S&H Indus.*, 2014 WL 1116700, at *6.

Accordingly, the Court should order Sortium to reimburse Big Time $53,225.00 for the work done by Mr. Loh and Ms. Overton.

<u>Requests for Costs</u>

The undersigned concludes that the June 17, 2014 judgment in this case taxing all costs of court against Plaintiff, *see* Dkt. No. 166, Judge Lynn's July 2, 2014 order directing Big Time to file a bill of costs, *see* Dkt. No. 171, and the bills of cost entered by the Clerk of Court, *see* Dkt. Nos. 173 & 175, make moot many – if not all – of Defendants' requests for costs.

In Hunger and CAM's Application for Attorneys' Fees, attorney Richard Hoffman sought "$719.00 in costs related to obtaining records from the United States Copyright Office," Dkt. No. 169-1 at 5, and attorney Gary Gillen sought "$37.59 in costs relating to [his] work on Sortium's copyright claim in this action," *see* Dkt. No. 169-2

at 4. But those costs, according to Mr. Hoffman, "are included in the Bill of Costs submitted by CAM contemporaneously" with the filing of that motion. *Id.* The accompanying Bill of Costs, Dkt. No. 170, was filed on July 1, 2014, and costs were taxed in the amount of $4,052.12 for CAM on July 15, 2014, *see* Dkt. No. 173. The undersigned understands and finds that no further court costs have been requested by Hunger and CAM.

In Big Time's Amended Application for Costs, Including Attorneys' Fees, that Defendant seeks "court costs in the sum of $2,344.50 (fees of the U.S. Copyright Office and court reporter fees)." Dkt. No. 168 at 3; *see also* Dkt. No. 167-1 at 9 (summarizing bills requesting $2,344.50 in court costs and $4,225.81 in disbursements for postage, delivery charges, photocopies, and legal research). Judge Lynn appears to have granted – at least in part – the motion for costs included within Big Time's motion when she ordered Big Time to "file its bill of costs, pursuant to Local Rule 54.1, no later than July 7, 2014." Dkt. No. 171.

Big Time filed its Bill of Costs on July 3, 2014, *see* Dkt. No. 172, and costs were taxed in amount of $2,063.35 against Sortium on July 17, 2014, *see* Dkt. No. 175. It appears that the costs taxed by the July 17, 2014 order include $78.35 in costs associated with copies made by Gardere Wynne Sewell LLP, and a total of $1,985.00 in costs associated with video copies and transcripts of the Burkhalter, Adams, Herman, Skinner, Hunger, and Sherwood depositions. *Compare* Dkt. No. 167-1 at 9 *with* Dkt. No. 175. The Bill of Costs did not appear to include previously-requested costs for online research, postage, delivery charges, or filing fees of the Library of

Congress. *See id.*

The undersigned recognizes that courts are split on whether nontaxable costs that are not listed in 28 U.S.C. § 1920 may be awarded as part of a reasonable attorneys' fee award under the Copyright Act, 17 U.S.C. § 505. *See Twentieth Century Fox Film Corp. v. Entertainment Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005) (noting circuit split). But, even if the Court were to conclude that Defendants may recover additional costs under the Copyright Act, a party seeking recovery of fees under 17 U.S.C. § 505 must establish that the amounts requested are "reasonable." The party seeking the fees bears the burden of submitting adequate evidence of what fees are reasonable. *See Kellstrom,* 50 F.3d at 324 ("[T]he party seeking reimbursement of attorneys' fees ... has the burden of establishing the number of attorney hours expended, and can meet that burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement."). Big Time has not done so. Big Time has not set forth with any particularity the additional costs for which it seeks reimbursement, nor has it submitted any evidence to establish that the costs associated with online research, postage, or delivery charges were reasonable. Accordingly, the Court should not award these expenses as part of the attorneys' fees under 17 U.S.C. § 505.

## Recommendation

Defendant Big Time Products, LLC's Amended Application for Costs, Including Attorneys' Fees [Dkt. No. 168] and Defendants Eric Hunger and Chicago American Manufacturing LLC's Application for Attorneys' Fees [Dkt. No. 169] should be granted

in part and denied in part as follows:

- Plaintiff SortiumUSA, LLC should be ordered to pay Eric Hunger and Chicago American Manufacturing, LLC, as an award of their reasonable attorneys' fees, $3,038.75 for fees billed by attorneys Richard M. Hoffman and Matthew Szwajkowski and $3,536.00 for fees billed by attorney Gary Gillen, for a total award of attorneys' fees to Eric Hunger and Chicago American Manufacturing, LLC of $6,574.75.

- Plaintiff SortiumUSA, LLC should be ordered to pay Big Time Products, LLC, as an award of its reasonable attorneys' fees, $79,385.50 for fees billed by attorneys Gregory J. Digel and Paul Vranicar and $53,225.00 for fees billed by attorney Peter L. Loh and paralegal Nita Overton, for a total award of attorneys' fees to Big Time Products, LLC of $132,610.50.

- All other requests for attorneys' fees and costs should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 9, 2014

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE